**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| BUNKER HILL TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NISSAN MOTOR CO., LTD., <br><br> Defendants. | CIVIL ACTION NO. 2:26-cv-231 <br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Bunker Hill Technologies, LLC files this Complaint against Defendant Nissan Motor Co., Ltd. ("Nissan") for infringement of U.S. Patent No. 7,960,857 ("the '857 Patent"), U.S. Patent No. 8,086,364 ("the '364 Patent"), U.S. Patent No. 8,326,467 ("the '467 Patent"), and U.S. Patent No. 9,821,668 ("the '668 Patent"),  (collectively, the "Asserted Patents").

## THE PARTIES

1.      Plaintiff Bunker Hill Technologies, LLC ("BHT") is a Texas limited liability company located in Allen, Texas.

2.      Defendant Nissan Motor Co., Ltd. is a corporation organized and existing under the laws of Japan with a principal place of business at 1-1 Takashima 1-chome, Nishi-ku, Yokohama, Kanagawa 220-8686, Japan. On information and belief, Nissan does business itself, and through its subsidiaries, affiliates, and agents, in the State of Texas and the Eastern District of Texas. On information and belief, Nissan, directly or through its wholly owned subsidiaries, is responsible for research and development, manufacturing, sales, offers for sale, marketing, importation, and

1

distribution of automotive vehicles from Nissan-managed brands (e.g., Nissan and Infiniti) in the United States, including this District.

3. Nissan conducts business in Texas and in the Eastern District of Texas, directly or through intermediaries, including subsidiaries, distributors, affiliates, retailers, suppliers, integrators, customers, and others.

4. Nissan is engaged in making, using, selling, offering for sale, and/or importing vehicles having electric or hybrid-electric powertrain systems ("Accused Products")[1] to and throughout the United States, including this District. Nissan also induces its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, and customers in the making, using, selling, offering for sale, and/or importing such products to and throughout the United States, including this District. To this end, Nissan and its foreign and U.S.-based subsidiaries—which act together as part of Nissan's global network of sales and manufacturing emissaries—have operated as agents of, and for, one another and have otherwise acted vicariously for Nissan as elements of the same business group and/or enterprise. Indeed, they work in concert and in orchestrated fashion, subject to agreements that are far nearer than arm's length, in order implement a distribution channel of infringing products within this District and the United States.

5. Nissan maintains a substantial corporate presence in the United States via at least its U.S.-based subsidiaries.

6. Alone and through at least the activities of its U.S.-based subsidiaries, Nissan conducts business in the United States and this District, including importing, making, distributing,

---

[1] The Accused Products include each Nissan- or Infiniti-branded vehicle having electric or hybrid-electric powertrain systems. Specific models referenced herein are examples of such vehicles. Accused Products include, but are not limited to, the 2023-25 Nissan Ariya, 2018-26 Nissan Leaf, and 2026 Nissan Rogue.

and selling Accused Products that infringe the Asserted Patents. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state*...."); see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

7.      Through importation, manufacture, offers to sell, sales, distributions, and related agreements to transfer ownership of Nissan's products with distributors and customers operating in and maintaining significant business presences in the United States, Nissan does extensive business in the United States, this State, and this District.

## JURISDICTION AND VENUE

8.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has specific and general personal jurisdiction over Nissan consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, among other things, Nissan has engaged in continuous, systematic, and substantial business in Texas and has committed and continues to commit, directly or through intermediaries (including subsidiaries, agents, distributors, affiliates, retailers, suppliers, integrators, customers, and others), acts of patent infringement in this State and this District. Such acts of infringement include making, using, testing, offering for sale, selling, and/or importing Accused Products (as more particularly identified and described throughout this Complaint) in this

State and this District and/or inducing others to commit acts of patent infringement in this State and District. Indeed, Nissan has purposefully and voluntarily placed, and are continuing to place, one or more Accused Products into the stream of commerce through established distribution channels (including the Internet) with the expectation and intent that such products will be sold to and purchased by consumers in the United States, this State, and this District; and with the knowledge and expectation that such products (whether in standalone form or as integrated in downstream products) will be imported into the United States, this State, and this District.

10.     In addition, Nissan has derived substantial revenues from their infringing acts occurring within this State and this District. Nissan has substantial business in this State and this District, including (i) at least part of its infringing activities alleged herein and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through and/or in concert with its agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers.

11.     In addition, Nissan, directly or through its wholly owned subsidiaries, has knowingly induced, and continues to knowingly induce, infringements within this State and this District by advertising, marketing, offering for sale and/or selling Accused Products (as more particularly identified and described throughout this Complaint) that incorporate the fundamental technologies covered by the Asserted Patents. Such advertising, marketing, offering for sale and/or selling of Accused Products is directed to consumers, customers, manufacturers, integrators, suppliers, distributors, resellers, partners, and/or end users, and this includes providing instructions, user manuals, advertising, and/or marketing materials that facilitate, direct and encourage use of infringing functionality with Nissan's knowledge thereof.

4

12.     Nissan has, in the multitude of ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over them. Nissan also has sufficient minimum contacts with this forum through their transaction of substantial business in this State and this District and their commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District.

13.     Venue is proper in this District under 28 U.S.C. § 1391 because, among other things, Nissan is a foreign corporation and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

**THE ASSERTED PATENTS AND TECHNOLOGY**

14.     BHT is the sole and exclusive owner of all right, title, and interest in the Asserted Patents and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the Asserted Patents, including the filing of this patent infringement lawsuit. Indeed, BHT owns all substantial rights in the Asserted Patents, including the right to exclude others and to recover damages for all past, present, and future infringements.

15.     The '857 Patent is entitled, "System and method for vehicle based uninterruptable power supply." The '857 Patent lawfully issued on June 14, 2011 and stems from U.S. Patent Application No. 12/326,189, which was filed on December 2, 2008.

16.     The '364 Patent is entitled, "System and method for operation of electric and hybrid vehicles." The '364 Patent lawfully issued on December 27, 2011 and stems from U.S. Patent Application No. 12/719,921, which was filed on March 9, 2010.

17.     The '467 Patent is entitled, "Controller and method of controlling a power system." The '467 Patent lawfully issued on December 4, 2012 and stems from U.S. Patent Application No. 13/225,975, which was filed on September 6, 2011.

18.    The '668 Patent is entitled, "Method and apparatus for charging multiple energy storage devices." The '668 Patent lawfully issued on November 21, 2017 and stems from U.S. Patent Application No. 14/656,782, which was filed on March 13, 2015.

19.    The claims of the Asserted Patents are directed to patent-eligible subject matter under 35 U.S.C. § 101. They are not directed to an abstract idea, and the technologies covered by the claims comprise systems and/or ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

## DEFENDANTS' PRE-SUIT KNOWLEDGE OF ITS INFRINGEMENT

20.    Prior to filing this Complaint, Nissan was put on notice of its infringements of the Asserted Patents by way of communication with BHT's licensing agent regarding a potential license to BHT assets as early as March 3, 2025.

21.    During ongoing discussions regarding a potential license, BHT's licensing agent sent an email on July 21, 2025 to Nissan personnel, including Sho Tanaka, notifying Nissan of claim charts in the data room previously made available to Nissan, including claim charts for the '857 Patent, the '467 Patent, and the '668 Patent that demonstrated Nissan's infringement and identified specific infringing Nissan products. Sho Tanaka on behalf of Nissan responded on August 4, 2025 indicating that a review of BHT's provided materials was in progress.

22.    On November 21, 2025, BHT's licensing agent further sent via email to Nissan claim charts for the '364 Patent identifying Nissan infringing products and demonstrating Nissan's infringement of the '364 Patent.

23.    The accused products addressed in the Counts below include, but are not limited to, products identified in BHT's communications to Nissan. Nissan's past and continuing sales of the accused products (i) willfully infringe the Asserted Patents, and (ii) impermissibly usurp the significant benefits of BHT's patented technologies without fair compensation.

6

24. To the extent necessary, BHT has complied with the requirements of 35 U.S.C. § 287, such that BHT may recover pre-suit damages.

## COUNT I

(INFRINGEMENT OF U.S. PATENT NO. 7,960,857)

25. BHT incorporates the preceding paragraphs herein by reference.

26. This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq.*

27. BHT is the owner of all substantial rights, title, and interest in and to the '857 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

28. The '857 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on June 14, 2011, after full and fair examination.

*Direct Infringement (35 U.S.C. § 271(a))*

29. Nissan directly infringes one or more claims of the '857 Patent in this District and elsewhere in Texas and the United States.

30. Nissan directly infringes, either by itself or via its agent(s), at least claim 1 of the '857 Patent as set forth under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing Nissan and Infiniti branded electric vehicles equipped that incorporate the fundamental technologies covered by the '857 Patent, including, but not limited to, Nissan and Infiniti branded vehicles (e.g., the 2026 Nissan Leaf) equipped with electric and/or hybrid-electric powertrain systems with Vehicle-to-Load (V2L) functionality (collectively, "the '857 Accused Products").

31. By way of illustration only, Nissan's '857 Accused Products comprise each and every element of claim 1 of the '857 Patent. The '857 Accused Products comprise "[a] vehicle-based uninterruptable power supply (UPS) system." For example, the '857 Accused Products

7

include a vehicle-based uninterruptable power supply (UPS) system having Vehicle-to-Load (V2L) functionality.



### Vehicle-to-Load (1500W)

LEAF's Vehicle-to-Load (V2L) tech is ready to power up your adventures with up to three 120-volt AC household power outlets with up to 1,500 watts of output, so you can charge e-bikes, power gaming systems, or run a vacuum — inside or outside through the weather-sealed available external outlet. You can even use LEAF as an emergency power source to keep essential appliances, like refrigerators, up and running in case of a blackout. LEAF isn't just a car; it's your personal, portable power bank, ready when you need it. [*]



Source: https://www.nissanusa.com/vehicles/electric-cars/leaf.html

32.    The '857 Accused Products comprise a vehicle-based UPS system comprising "an energy storage system located on-board a vehicle, the energy storage system configured to provide electric power for at least one of driving an electric motor of the vehicle and powering auxiliary devices of the vehicle and to also generate DC power transferable to an external load." For

example, the '857 Accused Products include a lithium-ion battery, i.e., an energy storage system located on-board the vehicle, that provides electric power for driving the electric motor, powering auxiliary devices, and to generate DC power transferable to an external load.



In markets such as Japan, the all-new LEAF continues the nameplate's ability to deliver Vehicle-to-Home (V2H) functionality, allowing it to supply electricity back to a home or receive solar generated energy. The all-new LEAF can be connected to a home energy management system, enabling users to power household appliances or charge devices using the energy stored in the vehicle's battery.

Source: https://usa.nissannews.com/en-US/releases/the-all-new-nissan-leaf-maximizes-the-ev-experience-with-lifestyle-enhancing-tech

RANGE & PERFORMANCE

| 303 | 131 | 75 |
|---|---|---|
| EPA-estimated mile range per charge for LEAF S+ — up to [*] | MPGe City for LEAF S+ — up to [*] | kWh battery |

Source: https://www.nissanusa.com/vehicles/electric-cars/leaf.html

33.     The '857 Accused Products comprise a vehicle-based UPS system comprising "an DC-AC inverter connected to the on-board energy storage system to receive the DC power therefrom and invert the DC power to an AC power useable by the external load." For example, the '857 Accused Products include a DC-AC inverter connected to the on-board energy storage

system to receive the DC Power and invert the DC power to an AC power usable by the external load.



Source: https://www.nissanusa.com/vehicles/electric-cars/leaf/features.html

34. The '857 Accused Products comprise a vehicle-based UPS system comprising "a charging device located on-board the vehicle and connected to the on-board energy storage system to provide a recharging power thereto." For example, the '857 Accused Products charge their

10

battery through regenerative braking, i.e., a charging device located on-board the vehicle and connected to the on-board energy storage system to provide a recharging power.

## Regen Braking
e-Step Technology

The e-Step technology allows you to use the motor to slow vehicle speed by simply letting off the pedal while helping to improve range by recapturing energy as well. [*]  [*]

LEAF connects on many levels. With adjustable regenerative braking and various Drive Modes to choose from, you can personalize your LEAF's performance for a more dialed-in EV experience.

Source: https://www.nissanusa.com/vehicles/electric-cars/leaf/features.html

35.    The '857 Accused Products comprise a vehicle-based UPS system comprising "a control system configured to: cause the energy storage system to provide power transferable to the external load by way of the DC-AC inverter." For example, the '857 Accused Products include a control system configured to cause the energy storage system to provide power transferable to the external load by way of the DC-AC inverter.

11



## V2L Connector (1.5kW)

MSRP $280 [*]

Connects to LEAF's AC charging port to provide a 120V AC outlet to power light-duty devices outside the vehicle, such as electronics or camping and outdoor gear. [*]

Source: https://www.nissanusa.com/vehicles/electric-cars/leaf/features.html

In markets such as Japan, the all-new LEAF continues the nameplate's ability to deliver Vehicle-to-Home (V2H) functionality, allowing it to supply electricity back to a home or receive solar generated energy. The all-new LEAF can be connected to a home energy management system, enabling users to power household appliances or charge devices using the energy stored in the vehicle's battery.



Source: https://usa.nissannews.com/en-US/releases/the-all-new-nissan-leaf-maximizes-the-ev-experience-with-lifestyle-enhancing-tech

Building on its long history of offering accessible EV mobility to all, Nissan developed the all-new 2026 LEAF to deliver enhanced driving range and to simplify charging. LEAF uses a new 75-kWh, liquid-cooled lithium-ion battery pack paired with a 214-horsepower electric motor.

LEAF can charge at up to 150 kW, speeding up road trips by reducing the amount of time needed to stop at public chargers. Its dual charging ports give owners convenience and flexibility in how and where they recharge.

Source: https://usa.nissannews.com/en-US/releases/2026-nissan-leaf-press-kit

36.    The '857 Accused Products comprise a vehicle-based UPS system comprising a control system configured to "determine one of a state-of-charge (SOC) and a voltage of the energy storage system while the energy storage system is providing power to the external load." For example, the '857 Accused Products determine a state-of-charge of the energy storage system while the energy storage system is providing power to the external load as evidenced by the state of charge display when the external load is in use.



Source: https://usa.nissannews.com/en-US/releases/2026-nissan-leaf-press-kit?selectedTabId=release-8a06c8aae820fc2c961299347625ccbc&gallery=release-8a06c8aae820fc2c961299347625bec8&viewallTab=release-8a06c8aae820fc2c961299347627faae-photos&photo=photo-a850b0e658c78586ea9c117ed6088e08

37.    The '857 Accused Products comprise a vehicle-based UPS system comprising a control system configured to "selectively operate the charging device to provide the recharging power to the energy storage system to maintain the one of the SOC and the voltage of the energy storage system within a pre-determined range while still providing power to the external load, such that the energy storage system provides uninterruptable power to the external load." For example, the '857 Accused Products charge their battery through regenerative braking, i.e., a charging device. While the vehicle is in use, power will be provided to the socket while also recharging the battery using regenerative braking.

## Regen Braking

### e-Step Technology

The e-Step technology allows you to use the motor to slow vehicle speed by simply letting off the pedal while helping to improve range by recapturing energy as well. [*]  [*]

LEAF connects on many levels. With adjustable regenerative braking and various Drive Modes to choose from, you can personalize your LEAF's performance for a more dialed-in EV experience.

Source: https://www.nissanusa.com/vehicles/electric-cars/leaf/features.html

*Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

38.    In addition and/or in the alternative to the direct infringements, Nissan indirectly infringes one or more claims of the '857 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '857 Patent (e.g., by charging or otherwise using '857 Accused Products).

39.     At a minimum, Nissan has had knowledge of the '857 Patent at least since service of this Complaint. Nissan also has knowledge of the '857 Patent since receiving detailed correspondence from BHT prior to the filing of the Complaint, alerting Nissan to its infringements. Since receiving notice of its infringements, Nissan has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated above) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '857 Patent. Indeed, Nissan has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials, user manuals (e.g., those available via https://www.nissanusa.com/owners/manuals-guides.html and https://www.nissan-techinfo.com/home.aspx), and online instructional materials (e.g., those available via https://www.youtube.com/user/nissanusa) that specifically teach and encourage customers and other end users to use the '857 Accused Products in an infringing manner, including by providing instructions on how to charge '857 Accused Products. By providing such instructions and support, Nissan knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '857 Patent.

### *Damages*

40.     BHT has been damaged as a result of Nissan's infringing conduct described in this Count. Nissan is, thus, liable to BHT in an amount that adequately compensates it for Nissan's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

41. Despite having knowledge of the '857 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '857 Patent, Nissan has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Nissan's infringing activities relative to the '857 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of BHT's rights with respect to the '857 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT II

### (INFRINGEMENT OF U.S. PATENT NO. 8,086,364)

42. BHT incorporates the preceding paragraphs herein by reference.

43. This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

44. BHT is the owner of all substantial rights, title, and interest in and to the '364 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

45. The '364 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on December 27, 2011, after full and fair examination.

*Direct Infringement (35 U.S.C. § 271(a))*

46. Nissan directly infringes one or more claims of the '364 Patent in this District and elsewhere in Texas and the United States.

47. Nissan directly infringes, either by itself or via its agent(s), at least claim 9 of the '364 Patent as set forth under 35 U.S.C. § 271(a) by making, using (including by testing), selling, offering to sell, and/or importing Nissan and Infiniti branded electric vehicles equipped that incorporate the fundamental technologies covered by the '364 Patent, including, but not limited

to, Nissan and Infiniti branded vehicles (e.g., the 2025 Nissan Ariya) equipped with electric and/or hybrid-electric powertrain systems (collectively, "the '364 Accused Products").

48.     By way of illustration only, Nissan's '364 Accused Products satisfy each and every element of claim 9 of the '364 Patent. Nissan performs via the '364 Accused Products "[a] method of energy management of an electric or hybrid-electric vehicle comprising: identifying a current location of a vehicle." For example, Nissan via the '364 Accused Products identifies the vehicle's current location using GPS.



Source: https://www.nissanusa.com/vehicles/electric-cars/ariya.html

CURRENT VEHICLE LOCATION

Display of current vehicle location

This navigation system combines the data obtained from the vehicle (by gyro sensor) and from GPS (Global Positioning System) satellites to calculate the current location of the vehicle. This position is then displayed throughout route guidance to a destination.

Source: https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/nissan-ariya/2025/2025-nissan-connect-ariya.pdf

49.     Nissan via the '364 Accused Products performs a method of energy management of an electric or hybrid-electric vehicle comprising "applying a pre-screening algorithm with respect to a link within a map and the current location, the pre-screening algorithm based on a maximum link length of a historical power-use database." For example, Nissan via the '364 Accused Products gathers data (e.g., EV range, energy consumption) associated with links within a map and applies a pre-screening algorithm (e.g., a best-first search algorithm) based on a maximum link length (e.g., links near a navigation route) of the vehicle's historical power-use database to determine whether the vehicle requires stopping at a charging station along a route.

> **ⓘ INFO:**
> The estimated driving range map shows the predicted area the vehicle can reach on the basis of the estimated driving range that is indicated in the vehicle information display. Driving habits, the actual road environment (hills, etc.), and traffic conditions (traffic jams, etc.) will affect the actual available range.
>
> To display the estimated driving range, take the following procedure.
> 1.   Touch [ ⌂ ] on the Launch Bar.
> 2.   Touch [All Apps] and then touch [EV].
> 3.   Touch [Driving Range].

> **INTELLIGENT ROUTE PLANNER**
> When setting a destination, the charging station is automatically added to the route according to the estimated remaining Li-ion battery power upon arrival.

Source: https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/nissan-ariya/2025/2025-nissan-connect-ariya.pdf

> - **After the Li-ion battery is charged, the displayed driving range is calculated <u>based on the actual average energy consumption of previous journeys.</u> The displayed driving range will vary every time the Li-ion battery is fully charged.**

Source: https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/nissan-ariya/2025/2025-nissan-ariya-owner-manual.pdf



Source: https://www.youtube.com/watch?v=W6Nb0zOkzXY

50.     Nissan via the '364 Accused Products performs a method of energy management of an electric or hybrid-electric vehicle comprising "determining if one or more links are within a given bounds." For example, Nissan via the '364 Accused Products determines if a link (e.g., road segment to charging station) is within a given bounds (e.g., whether the link is close to the navigation route).

 **INFO:**

The estimated driving range map shows the predicted area the vehicle can reach on the basis of the estimated driving range that is indicated in the vehicle information display. Driving habits, the actual road environment (hills, etc.), and traffic conditions (traffic jams, etc.) will affect the actual available range.

To display the estimated driving range, take the following procedure.

1. Touch [ ⌂ ] on the Launch Bar.
2. Touch [All Apps] and then touch [EV].
3. Touch [Driving Range].

**INTELLIGENT ROUTE PLANNER**

When setting a destination, the charging station is automatically added to the route according to the estimated remaining Li-ion battery power upon arrival.

Source: https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/nissan-ariya/2025/2025-nissan-connect-ariya.pdf





Source: https://www.youtube.com/watch?v=W6Nb0zOkzXY

51.      Nissan via the '364 Accused Products performs a method of energy management of an electric or hybrid-electric vehicle comprising, if one or more links are within a given bounds, then "matching the current location of the vehicle to the link within the map via a subsequential matching algorithm." For example, Nissan via the '364 Accused Products matches the vehicle's current location and the link within the map to gather the vehicle data that is relevant to a navigation route (e.g., vehicle range and power consumption) and to determine whether the vehicle must stop at a charging station along the navigation route (i.e., matching the current location of the vehicle to the link within the map via a subsequential matching algorithm).

> **DRIVING WITH A DISCHARGED LI-ION BATTERY**
> When a destination is set in the navigation system that exceeds the available vehicle range, the navigation system automatically searches the location of nearby charging stations. When the nearby charging station locations are displayed, charge the Li-ion battery as soon as possible.

- **After the Li-ion battery is charged, the displayed driving range is calculated based on the actual average energy consumption of previous journeys. The displayed driving range will vary every time the Li-ion battery is fully charged.**

Source: https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/nissan-ariya/2025/2025-nissan-ariya-owner-manual.pdf



Source: https://www.youtube.com/watch?v=W6Nb0zOkzXY

Start your journey here with Intelligent Route Planner for Nissan ARIYA®. Create an itinerary for your next adventure and choose routes with charging stations, including Fast Charging and more. The system will automatically calculate and insert all of the charging station waypoints needed for your vehicle to reach the selected destination successfully. [*]  [*]

Source: https://www.nissanusa.com/owners/connect/features-apps/ev-trip-planner.html

23

**Connected Vehicle Data**

If you have a connected vehicle, your vehicle may be equipped with NissanConnect Services, which electronically transmits data generated by your vehicle. This information could include data collected in the context of a trial period or demonstration mode. Through these services, we may obtain vehicle and driving information, such as:

- **Vehicle operation** – including Vehicle Identification Number (VIN), Precise Geolocation and navigation information, speed and distance information, driving behavior, EV battery information (including use management, charging history and performance), electrical system functions, diagnostic trouble codes, maintenance conditions, software version information, and similar data
- **Vehicle usage** – your use of the vehicle's functions and some corresponding services, websites and smartphone applications
- **Vehicle status** – information about door locks, open doors, engine status, etc.
- **Vehicle safety** – data about certain accidents involving the vehicle (for example, the direction from which the vehicle was hit, and which air bags have deployed)

Source: https://www.nissanusa.com/privacy.html

52. Nissan via the '364 Accused Products performs a method of energy management of an electric or hybrid-electric vehicle comprising, if one or more links are within a given bounds, then "uploading power information used by the vehicle along the link and at the current location into the historical power-use database." For example, Nissan via the '364 Accused Products uploads power information (e.g., state of charge) used by the vehicle along the link and at the current location into the historical power-use database.

24



WBS0046X

## ESTIMATED DRIVING RANGE

The driving range (miles or km) provides an estimated distance that the vehicle can be driven before recharging is necessary. The driving range is constantly being calculated, based on the amount of available Li-ion battery charge and the actual power consumption average.

The displayed driving range is the distance calculated based on the current driving style.



WAC1278X



WAC1280X

> - **After the Li-ion battery is charged, the displayed driving range is calculated based on the actual average energy consumption of previous journeys. The displayed driving range will vary every time the Li-ion battery is fully charged.**

Source: https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/nissan-ariya/2025/2025-nissan-ariya-owner-manual.pdf

**Connected Vehicle Data**

If you have a connected vehicle, your vehicle may be equipped with NissanConnect Services, which electronically transmits data generated by your vehicle. This information could include data collected in the context of a trial period or demonstration mode. Through these services, we may obtain vehicle and driving information, such as:

- **Vehicle operation** – including Vehicle Identification Number (VIN), Precise Geolocation and navigation information, speed and distance information, driving behavior, EV battery information (including use management, charging history and performance), electrical system functions, diagnostic trouble codes, maintenance conditions, software version information, and similar data
- **Vehicle usage** – your use of the vehicle's functions and some corresponding services, websites and smartphone applications
- **Vehicle status** – information about door locks, open doors, engine status, etc.
- **Vehicle safety** – data about certain accidents involving the vehicle (for example, the direction from which the vehicle was hit, and which air bags have deployed)

Source: https://www.nissanusa.com/privacy.html

| Driving Analysis | Driving Journey History |
| --- | --- |

Stay connected with your Nissan ARIYA and LEAF and see vehicle stats like average energy consumption, $CO_2$ savings and more. [*]

| Driving Analysis | Driving Journey History |
| --- | --- |

Get access to past trips, routes and your individual driving trends from the palm of your hand. [*]

Source: https://www.nissanusa.com/owners/connect/features-apps/ev-trip-planner.html

*Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

53.    In addition and/or in the alternative to the direct infringements, Nissan indirectly infringes one or more claims of the '364 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '364 Patent (e.g., by using navigation or otherwise using '364 Accused Products).

54.    At a minimum, Nissan has had knowledge of the '364 Patent at least since service of this Complaint. Nissan also has knowledge of the '364 Patent since receiving detailed correspondence from BHT prior to the filing of the Complaint, alerting Nissan to its infringements.

Since receiving notice of its infringements, Nissan has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated above) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '364 Patent. Indeed, Nissan has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials, user manuals (e.g., those available via https://www.nissanusa.com/owners/manuals-guides.html and https://www.nissan-techinfo.com/home.aspx), and online instructional materials (e.g., those available via https://www.youtube.com/user/nissanusa) that specifically teach and encourage customers and other end users to use the '364 Accused Products in an infringing manner, including by providing instructions on how to use navigation for '364 Accused Products. By providing such instructions and support, Nissan knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '364 Patent.

***Damages***

55.     BHT has been damaged as a result of Nissan's infringing conduct described in this Count. Nissan is, thus, liable to BHT in an amount that adequately compensates it for Nissan's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

56.     Despite having knowledge of the '364 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '364 Patent, Nissan has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Nissan's

28

infringing activities relative to the '364 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of BHT's rights with respect to the '364 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 8,326,467)

57.     BHT incorporates the preceding paragraphs herein by reference.

58.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

59.     BHT is the owner of all substantial rights, title, and interest in and to the '467 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

60.     The '467 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on December 4, 2012, after full and fair examination.

*Direct Infringement (35 U.S.C. § 271(a))*

61.     Nissan directly infringes one or more claims of the '467 Patent in this District and elsewhere in Texas and the United States.

62.     Nissan directly infringes, either by itself or via its agent(s), at least claim 16 of the '467 Patent as set forth under 35 U.S.C. § 271(a) by making, using (including by testing), selling, offering to sell, and/or importing Nissan and Infiniti branded electric vehicles equipped that incorporate the fundamental technologies covered by the '467 Patent, including, but not limited to, Nissan and Infiniti branded vehicles (e.g., the 2025 Nissan Leaf) equipped with electric and/or hybrid-electric powertrain systems (collectively, "the '467 Accused Products").

63.     By way of illustration only, Nissan's '467 Accused Products comprise each and every element of claim 16 of the '467 Patent. Nissan performs via the '467 Accused Products "[a]

29

method of controlling a power system." For example, Nissan performs via the '467 Accused

Products a method of controlling a power system through the charging timer feature.



Source: https://www.nissanusa.com/vehicles/electric-cars/2025-leaf.html

## CHARGING TIMER

Use charging timer to schedule when the Li-ion battery charges. The vehicle automatically begins charging at the scheduled times when the charge connector is connected to the vehicle. The timers do not need to be reset each time the Li-ion battery needs charging.

The charging timer can save two timer settings that include the charging start time and end time. The charging timer can be applied to the timer settings for each day of the week (models with Navigation System).

The vehicle automatically begins charging at the scheduled times when the charge connector is connected to the vehicle. The timers do not need to be reset each time the Li-ion battery needs to be charged.

Source https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/leaf/2025/2025-nissan-leaf-owner-manual.pdf

64.    Nissan performs via the '467 Accused Products a method of controlling a power system comprising "determining, by a first controller, an operating condition of at least one first power system component and at least one second power system component of a plurality of power system components within the power system, wherein the at least one second power system component includes a power storage device switchable between a power storage mode of operation and a power supply mode of operation." For example, the '467 Accused Products determine, by an engine control module (ECM) (i.e., first controller), an operating condition (e.g., charging conditions) of the vehicle charging system (i.e., a first power system component) and the vehicle high-voltage battery (i.e., a second power system component), wherein the vehicle high-voltage battery is switchable between a charging mode (i.e., a power storage mode of operation) and a driving mode (i.e., a power supply mode).



Source: https://www.nissanparts.cc/oem-parts/nissan-control-module-237405sa6b

**When charging**

When the Li-ion battery is being charged, the charging status indicator lights will change depending on the amount the Li-ion battery is charged.

*: This value is also displayed by the battery available charge gauge on the vehicle in-formation display.



Source: https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/leaf/2025/2025-nissan-leaf-owner-manual.pdf

65.    Nissan performs via the '467 Accused Products a method of controlling a power system comprising "identifying a predetermined time for completing a charging operation of the power storage device." For example, Nissan via the '467 Accused Products identifies a predetermined time (i.e., end time) for completing a charging operation of the high-voltage battery.



## CHARGING TIMER

Use charging timer to schedule when the Li-ion battery charges. The vehicle automatically begins charging at the scheduled times when the charge connector is connected to the vehicle. The timers do not need to be reset each time the Li-ion battery needs charging.

The charging timer can save two timer settings that include the charging start time and end time. The charging timer can be applied to the timer settings for each day of the week (models with Navigation System).

The vehicle automatically begins charging at the scheduled times when the charge connector is connected to the vehicle. The timers do not need to be reset each time the Li-ion battery needs to be charged.

Source: https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/leaf/2025/2025-nissan-leaf-owner-manual.pdf

66.     Nissan performs via the '467 Accused Products a method of controlling a power

system comprising "determining whether a switching of the power storage device from the power

storage mode of operation to the power supply mode of operation will prevent the charging operation from completing within the predetermined time." For example, Nissan via the '467 Accused Products determines whether a switching of the battery from the charging mode to the driving mode of operation at the departure time will prevent the charging operation from completing within the predetermined time.

**Full charge has priority**

If "Full charge has priority" is turned on, the charge start timer will be advanced if the fully charged condition of the Li-ion battery cannot be achieved during the start time to end time interval. If the fully charged battery condition cannot be achieved, the charge continues until the battery is fully charged.



Source: https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/leaf/2025/2025-nissan-leaf-owner-manual.pdf

34

67.     Nissan performs via the '467 Accused Products a method of controlling a power system comprising "determining, by the first controller, whether a predetermined condition is met based on at least one operating condition." For example, Nissan via the '467 Accused Products determines, by the first controller (i.e., ECM), whether a predetermined condition (i.e., battery reaching full charge) is met based on at least one operating condition (i.e., the charging state of the battery).



Source: https://www.nissanparts.cc/oem-parts/nissan-control-module-237405sa6b

## CHARGING TIMER

Use charging timer to schedule when the Li-ion battery charges. The vehicle automatically begins charging at the scheduled times when the charge connector is connected to the vehicle. The timers do not need to be reset each time the Li-ion battery needs charging.

The charging timer can save two timer settings that include the charging start time and end time. The charging timer can be applied to the timer settings for each day of the week (models with Navigation System).

The vehicle automatically begins charging at the scheduled times when the charge connector is connected to the vehicle. The timers do not need to be reset each time the Li-ion battery needs to be charged.

### Full charge has priority

If "Full charge has priority" is turned on, the charge start timer will be advanced if the fully charged condition of the Li-ion battery cannot be achieved during the start time to end time interval. If the fully charged battery condition cannot be achieved, the charge continues until the battery is fully charged.

The time to completely charge the vehicle Li-ion battery varies based on the state of charge of the Li-ion battery, condition and age of the Li-ion battery, temperature of the Li-ion battery, ambient temperature and condition of the power source connected to the vehicle, and whether the electric equipment (such as the air conditioner, which consumes electric power) is used.

36

**When charging**

When the Li-ion battery is being charged, the charging status indicator lights will change depending on the amount the Li-ion battery is charged.

\* : This value is also displayed by the battery available charge gauge on the vehicle information display.

Source: https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/leaf/2025/2025-nissan-leaf-owner-manual.pdf

68.     Nissan performs via the '467 Accused Products a method of controlling a power system comprising "transmitting, by the first controller, a command to at least one second controller to at least one of electrically couple the at least one first power system component to the at least one second power system component and electrically decouple the at least one first power system component from the at least one second power system component based on whether the predetermined condition is met." For example, Nissan via the '467 Accused Products transmits, by the first controller (i.e., ECM), a command to at least one second controller (i.e., power delivery module) to decouple the first power system component (i.e., charging system) from the second power system component (i.e., high-voltage battery) based on whether the predetermined condition (i.e., battery reaching full charge) is met.





Source: https://www.nissanparts.cc/oem-parts/nissan-control-module-237405sa6b



Source: https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/leaf/2025/2025-nissan-leaf-owner-manual.pdf

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

69.     In addition and/or in the alternative to the direct infringements, Nissan indirectly infringes one or more claims of the '467 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the '467 Patent (e.g., by using the charge scheduling feature).

70.     At a minimum, Nissan has had knowledge of the '467 Patent at least since service of this Complaint. Nissan also has knowledge of the '467 Patent since receiving detailed correspondence from BHT prior to the filing of the Complaint, alerting Nissan to its infringements. Since receiving notice of its infringements, Nissan has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated above) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '467 Patent. Indeed, Nissan has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials, user manuals (e.g., those available via https://www.toyota.com/owners/warranty-owners-manuals/), and online instructional materials (e.g., those available via https://www.youtube.com/toyotausa) that specifically teach and encourage customers and other end users to use the '467 Accused Products in an infringing manner, including the charge scheduling feature. By providing such instructions and support, Nissan knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '467 Patent.

*Damages*

71.     BHT has been damaged as a result of Nissan's infringing conduct described in this Count. Nissan is, thus, liable to BHT in an amount that adequately compensates it for Nissan's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

72.     Despite having knowledge of the '467 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '467 Patent, Nissan has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Nissan's infringing activities relative to the '467 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of BHT's rights with respect to the '467 Patent, justifying enhanced damages under 35 U.S.C. § 284.

### COUNT IV
(INFRINGEMENT OF U.S. PATENT NO. 9,821,668)

73.     BHT incorporates the preceding paragraphs herein by reference.

74.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

75.     BHT is the owner of all substantial rights, title, and interest in and to the '668 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

76.     The '668 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on November 21, 2017, after full and fair examination.

*Direct Infringement (35 U.S.C. § 271(a))*

77.     Nissan directly infringes one or more claims of the '668 Patent in this District and elsewhere in Texas and the United States.

78.     Nissan directly infringes, either by itself or via its agent(s), at least claim 16 of the '668 Patent as set forth under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing Nissan and Infiniti branded electric vehicles equipped that incorporate the fundamental technologies covered by the '668 Patent, including, but not limited to, Nissan and Infiniti branded

vehicles (e.g., the 2026 Nissan Leaf) equipped with electric and/or hybrid-electric powertrain systems (collectively, "the '668 Accused Products").

79.    By way of illustration only, Nissan's '668 Accused Products comprise each and every element of claim 16 of the '668 Patent. The '668 Accused Products comprise "[a]n energy storage and management system (ESMS) for a vehicle propulsion system, the ESMS comprising: a plurality of energy storage devices including: a first energy storage device; and a second energy storage device." For example, the '668 Accused Products include an energy storage and management system (ESMS) for a vehicle propulsion system comprising a 12-Volt battery (i.e., a first energy storage device) and a high voltage EV battery (i.e., a second energy storage device).



Source: https://www.nissanusa.com/vehicles/electric-cars/leaf.html

THE EV (Electric Vehicle) SYSTEM

This vehicle uses two types of batteries. One is the 12-volt battery that is the same as the battery in vehicles powered by gasoline engine, the other is the Li-ion battery (high voltage).

The 12-volt battery provides power to the vehicle systems and features such as the audio system, supplemental restraint systems, headlights and windshield wipers.

The Li-ion battery provides power to the electric motor (traction motor) that moves the vehicle.

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

80. The '668 Accused Products comprise an ESMS comprising "a plurality of DC/DC conversion devices including: a first DC/DC conversion device coupleable to an external charging device and configured to charge the plurality of energy storage devices." For example, the '668 Accused Products include a plurality of DC/DC conversion devices, including a Boost DC-DC Converter in the AC Charging Subsystem (i.e., a first DC/DC conversion device) coupleable to an AC Charging Input (i.e., an external charging device) and configured to charge the 12-Volt battery and high voltage EV battery (i.e., plurality of energy storage devices).

HOW TO NORMAL CHARGE (AC 220–240 volt) BY CHARGING DEVICE

- Normal charge uses the charging device (AC 220 - 240 volt, 16A or 32A) that can be installed in your home to charge the Li-ion battery.

42

**CHARGING THE 12-VOLT BATTERY**

**Basic information**

The 12-volt battery is charged automatically using electricity stored in the Li-ion battery.

**While vehicle is in use**

The Li-ion battery charges the 12-volt battery as necessary when the power switch is in the READY to drive position or ON position.

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

81.     The '668 Accused Products comprise an ESMS comprising a plurality of DC/DC conversion devices including "a second DC/DC conversion device coupleable to an internal charging device and configured to charge the plurality of energy storage devices." For example, the '668 Accused Products include a plurality of DC/DC conversion devices, including a second DC-DC Converter (i.e., a second DC/DC conversion device) coupleable to the electric motor during regenerative braking (i.e., an internal charging device) and configured to charge the 12-Volt battery and high voltage EV battery (i.e., plurality of energy storage devices).



1. On Board Charger (OBC)
2. High voltage junction box
3. PTC cabin heater
4. Service plug
5. DC/AC inverter
6. DC/DC converter
7. Traction motor/Inverter/Reducer
8. Air conditioner compressor
9. High-voltage wire harnesses (colored orange)
10. Li-ion battery
11. PTC battery heater

## CHARGING THE 12-VOLT BATTERY

### Basic information

The 12-volt battery is charged automatically using electricity stored in the Li-ion battery.

### While vehicle is in use

The Li-ion battery charges the 12-volt battery as necessary when the power switch is in the READY to drive position or ON position.

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

## EV Regenerative Braking

One remarkable feature of EVs is regenerative braking. When you release the accelerator or apply the brakes, the electric motor operates in reverse, acting as a generator to convert kinetic energy back into electricity.

This recovered energy is then stored in the battery, increasing overall efficiency and extending the car's range, keeping you in the driver's seat for longer between charges.

Source: https://www.sheridannissan.com/how-does-an-electric-car-work-new-castle-de/

82.     The '668 Accused Products comprise an ESMS comprising a plurality of DC/DC conversion devices including "a third DC/DC conversion device coupled to the second DC/DC conversion device." For example, the '668 Accused Products include a plurality of DC/DC conversion devices, including a Buck DC-DC Converter (i.e., a third DC/DC conversion device) coupled to the second DC-DC Converter (i.e., the second DC/DC conversion device).

## 12-volt battery charge warning light



The DC/DC converter converts 400 volt Li-ion battery voltage to charge the 12-volt battery.

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

83.     The '668 Accused Products comprise an ESMS comprising "a plurality of switching devices including: a first switching device and a second switching device coupled to a

45

common junction that has a common path to the first energy storage device." For example, the '668 Accused Products include a plurality of switching devices, including a relay/contactor/transistor in the AC charging subsystem (i.e., a first switching device) and a transistor in the motor control unit (MCU)/vehicle control unit (VCU) (i.e., a second switching device) coupled to a common junction (i.e., HV DC Bus) that has a common path to the 12-volt battery (i.e., the first energy storage device).

---

### 3. Temperature and Timing Issues

Extreme heat or cold can affect charging. Orange County gets hot in summer, and batteries may cool themselves before charging. This can delay the process.

Also check if:

- You've set a delayed charging schedule in your LEAF's menu.
- The charging timer is turned on by mistake.

These features can stop charging from starting right away, even if everything else looks fine.

---

Source: https://www.nissangardengrove.com/why-your-nissan-ev-isnt-troubleshooting/

---

### 2.3. Traction inverter

Passenger EVs employ various types of inverter topologies and associated semiconductor devices. Conventional two-level inverter topology is currently employed in EVs available on the market. For instance, the Chevrolet Volt, Toyota Prius, Nissan Leaf, and Audi e-Tron use a 2-level topology with double-side cooling insulated gate bipolar transistor (IGBT) modules (Lee et al., 2013). Two-level inverter topologies with silicon carbide metal oxide semiconductor field effect transistors (Sic MOSFET) and IGBT modules are used in Tesla Model S and Module 3, respectively.

---

Source: https://www.sciencedirect.com/science/article/pii/S2352484723014889

84.     The '668 Accused Products comprise an ESMS comprising "the first switching device being between the common junction and the external charging device via a first path that does not include the second switching device." For example, in the '668 Accused Products, the relay/contactor/transistor in the AC charging subsystem (i.e., first switching device) is between the HV DC Bus (i.e., the common junction) and the AC Charging Input (i.e., external charging device)

via a first path that does not include the transistor in the motor control unit (MCU)/vehicle control

unit (VCU) (i.e., second switching device).

> ### 3. Temperature and Timing Issues
> Extreme heat or cold can affect charging. Orange County gets hot in summer, and batteries may cool themselves before charging. This can delay the process.
>
> Also check if:
>
> * You've set a delayed charging schedule in your LEAF's menu.
> * The charging timer is turned on by mistake.
>
> These features can stop charging from starting right away, even if everything else looks fine.

Source: https://www.nissangardengrove.com/why-your-nissan-ev-isnt-troubleshooting/

85.    The '668 Accused Products comprise an ESMS comprising "the second switching

device being between the common junction and the internal charging device via a second path that

does not include the first switching device." For example, in the '668 Accused Products, the

transistor in the motor control unit (MCU)/vehicle control unit (VCU) (i.e., second switching

device) is between the HV DC Bus (i.e., the common junction) and the electric motor during

regenerative braking (i.e., an internal charging device) via a second path that does not include the

relay/contactor/transistor in the AC charging subsystem (i.e., first switching device).

> ### 2.3. Traction inverter
> Passenger EVs employ various types of inverter topologies and associated semiconductor devices. Conventional two-level inverter topology is currently employed in EVs available on the market. For instance, the Chevrolet Volt, Toyota Prius, Nissan Leaf, and Audi e-Tron use a 2-level topology with double-side cooling insulated gate bipolar transistor (IGBT) modules (Lee et al., 2013). Two-level inverter topologies with silicon carbide metal oxide semiconductor field effect transistors (Sic MOSFET) and IGBT modules are used in Tesla Model S and Module 3, respectively.

Source: https://www.sciencedirect.com/science/article/pii/S2352484723014889

86.    The '668 Accused Products comprise an ESMS comprising a plurality of switching

devices including "a third switching device coupled between the second energy storage device and

the third DC/DC conversion device." For example, the '668 Accused Products include a plurality of switching devices, including a Contactor (i.e., a third switching device) coupled between the high voltage EV battery (i.e., second energy storage device) and the Buck DC-DC Converter (i.e., third DC/DC conversion device).

87.     The '668 Accused Products comprise an ESMS comprising "a control system configured to: selectively control operation of the first DC/DC conversion device and at least one switching device when charging the first and second energy storage devices from the external charging device." For example, the '668 Accused Products include a vehicle control system with multiple electric control units (ECUs) (collectively a "control system") configured to selectively control operation of the Boost DC-DC Converter in the AC Charging Subsystem (i.e., a first DC/DC conversion device) and a relay/contactor/transistor in the AC charging subsystem (i.e., at least one switching device) when charging the 12-volt battery and high voltage EV battery (i.e., first and second energy storage devices) from the AC Charging Input (i.e., external charging device).

> **HOW TO NORMAL CHARGE (AC 220–240 volt) BY CHARGING DEVICE**
>
> - Normal charge uses the charging device (AC 220 - 240 volt, 16A or 32A) that can be installed in your home to charge the Li-ion battery.

## CHARGING THE 12-VOLT BATTERY

### Basic information

The 12-volt battery is charged automatically using electricity stored in the Li-ion battery.

### While vehicle is in use

The Li-ion battery charges the 12-volt battery as necessary when the power switch is in the READY to drive position or ON position.

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

88.     The '668 Accused Products comprise an ESMS comprising a control system configured to "selectively control operation of the second and third DC/DC conversion devices and at least one switching device when charging the first and second energy storage devices from the internal charging device." For example, the control system of the '668 Accused Products is configured to selectively control operation of the second DC-DC Converter (i.e., a second DC/DC conversion device) and the Buck DC-DC Converter (i.e., third DC/DC conversion device) and a relay/contactor/transistor in the AC charging subsystem (i.e., at least one switching device) when charging the 12-volt battery and high voltage EV battery (i.e., first and second energy storage devices) from the electric motor during regenerative braking (i.e., an internal charging device).

### EV Regenerative Braking

One remarkable feature of EVs is regenerative braking. When you release the accelerator or apply the brakes, the electric motor operates in reverse, acting as a generator to convert kinetic energy back into electricity.

This recovered energy is then stored in the battery, increasing overall efficiency and extending the car's range, keeping you in the driver's seat for longer between charges.

Source: https://www.sheridannissan.com/how-does-an-electric-car-work-new-castle-de/

### CHARGING THE 12-VOLT BATTERY

**Basic information**

The 12-volt battery is charged automatically using electricity stored in the Li-ion battery.

**While vehicle is in use**

The Li-ion battery charges the 12-volt battery as necessary when the power switch is in the READY to drive position or ON position.

Source: https://www.nissan-techinfo.com/refgh0v/og/Leaf/2026-Nissan-LEAF.pdf

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

89.    In addition and/or in the alternative to the direct infringements, Nissan indirectly infringes one or more claims of the '668 Patent by knowingly and intentionally inducing others, including its customers and/or other end users, to directly infringe the ' '668 Patent (e.g., by charging or otherwise using '668 Accused Products).

90.     At a minimum, Nissan has had knowledge of the '668 Patent at least since service of this Complaint. Nissan also has knowledge of the '668 Patent since receiving detailed correspondence from BHT prior to the filing of the Complaint, alerting Nissan to its infringements. Since receiving notice of its infringements, Nissan has actively induced, and continues to actively induce, the direct infringements of its customers and/or other end users (e.g., as illustrated above) as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '668 Patent. Indeed, Nissan has intended to cause, continues to intend to cause, and has taken, and continues to take, affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials, user manuals (e.g., those available via https://www.nissanusa.com/owners/manuals-guides.html and https://www.nissan-techinfo.com/home.aspx), and online instructional materials (e.g., those available via https://www.youtube.com/user/nissanusa) that specifically teach and encourage customers and other end users to use the '668 Accused Products in an infringing manner, including by providing instructions on how to charge '668 Accused Products. By providing such instructions and support, Nissan knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement of the '668 Patent.

***Damages***

91.     BHT has been damaged as a result of Nissan's infringing conduct described in this Count. Nissan is, thus, liable to BHT in an amount that adequately compensates it for Nissan's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

92.     Despite having knowledge of the '668 Patent and knowledge that it directly and/or indirectly infringes one or more claims of the '668 Patent, Nissan has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Nissan's infringing activities relative to the ' '668 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of BHT's rights with respect to the '668 Patent, justifying enhanced damages under 35 U.S.C. § 284.

## CONCLUSION

93.     BHT is entitled to recover from Nissan the damages sustained by BHT as a result of Nissan's wrongful acts and willful infringements in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

94.     BHT has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and, in such case, BHT is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

95.     BHT hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

96.     BHT respectfully requests that the Court find in its favor and against Nissan, and that the Court grant BHT the following relief:

(i)     Judgment that one or more claims of the Asserted Patents have been infringed, either literally and/or under the doctrine of equivalents, by Nissan;

(ii)    Judgment that one or more claims of the Asserted Patents have been willfully infringed, either literally and/or under the doctrine of equivalents, by Nissan;

(iii)    Judgment that Nissan account for and pay to BHT all damages and costs incurred by BHT because of Nissan's infringements and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

(iv)    Judgment that Nissan account for and pay to BHT a reasonable, ongoing, post-judgment royalty because of Nissan's infringements, including continuing infringing activities, and other conduct complained of herein;

(v)    Judgment that BHT be granted pre-judgment and post-judgment interest on the damages caused by Nissan's infringements and other conduct complained of herein;

(vi)    Judgment that this case is exceptional under the provisions of 35 U.S.C. § 285 and award enhanced damages; and

(vii)    Such other and further relief as the Court deems just and equitable.

54

Dated: March 20, 2026

Respectfully submitted,

*/s/ Patrick J. Conroy*
**Patrick J. Conroy**
Texas Bar No. 24012448
**Ryan P. Griffin**
Texas Bar No. 24053687
**T. William Kennedy Jr.**
Texas Bar No. 24055771
**Jonathan H. Rastegar**
Texas Bar No. 24064043
**Nathan L. Levenson**
Texas Bar No. 24097992
**Brandon G. Moore**
Texas Bar No. 24082372
**NELSON BUMGARDNER
CONROY PC**
2727 N. Harwood St., Suite 250
Dallas, TX 75201
pat@nelbum.com
ryan@nelbum.com
bill@nelbum.com
jon@nelbum.com
nathan@nelbum.com
brandon@nelbum.com

**Attorneys for Plaintiff Bunker Hill
Technologies, LLC**